Mattie Wilson PAIRAMORE, Petitioner,

v.

William Sanford PAIRAMORE,
Respondent.

Supreme Court of Tennessee.

Feb. 28, 1977.

Walker T. Tipton, Covington, for petitioner.

John E. Procter, Covington, for respondent.

## OPINION

FONES, Justice.

This divorce case is before this Court for the second time. The first petition for certiorari in 1974, was denied but the Court filed a memorandum opinion suggesting that Mrs. Pairamore's claim for homestead under T.C.A. § 36–824 be given consideration on remand. She had expressly asked for homestead for the first time in her 1974 certiorari petition to this Court but her complaint had asked that her husband's interest in the family residence be divested out of him and vested in her, held to be a sufficient prayer to support an award of homestead in *Trimble v. Trimble,* 224 Tenn. 571, 458 S.W.2d 794 (1970). Neither the trial court nor the Court of Appeals had considered homestead and the decree of the Court of Appeals, insofar as relevant here, had awarded petitioner periodic alimony in a nominal sum and remanded the cause to the trial court for the enforcement of its decree and retention in that court for any modification required by a change of circumstances of the parties.

On remand to the General Sessions Court of Tipton County, that court decreed that it did not have jurisdiction to order a sale of the family residence for the purpose of awarding homestead out of the proceeds thereof. On petitioner's appeal from that order to the Court of Appeals that Court held that its former decree had not provided for homestead and, by implication, that this Court's memorandum opinion denying certiorari had no force and effect whatever on the finality of the Court of Appeals decree, which left nothing within the jurisdiction of the trial court except the enforcement and/or modification of periodic alimony.

We granted this second petition for certiorari, where, obviously, the primary question is the extent of the jurisdiction of this Court on a petition for the writ of certiorari that is disposed of by denial of the writ accompanied by an opinion.

The question of when this Court acquires jurisdiction on certiorari has been considered in a number of cases. There is a line of cases using language to the effect that this Court has no jurisdiction whatever unless and until the writ of certiorari is granted. Other cases hold that jurisdiction vests in this Court upon the timely filing of a petition for the writ of certiorari.

Cases holding that jurisdiction is dependent entirely upon the granting of the writ are *Red Top Cab Co. v. Garside,* 155 Tenn. 614, 298 S.W. 263 (1927), *Cantrell v. Louisville & N. R. Co.,* 179 Tenn. 180, 163 S.W.2d 824 (1942), and *McAllester v. McAllester,* 217 Tenn. 226, 396 S.W.2d 363 (1965).

In *Red Top* the Court said:

"The bare filing of such a petition does not even remove the case to this Court." 155 Tenn. at 617, 298 S.W. at 264.

In *Cantrell* the Court said:

"Unless the writ of *certiorari* be granted, the case does not get into this court. It is not until the writ is granted that 'the original transcript . . . shall be filed in the supreme court.' . . . When *certiorari* is denied, the result is that this court thereby refuses to take jurisdiction of the case." 179 Tenn. at 182, 183, 163 S.W.2d at 825.

In *McAllester* the Court having written and filed in the cause an opinion denying the writ of certiorari, on petition to rehear,

a second opinion was written and published wherein the Court said:

"[W]e have no jurisdiction to entertain this motion since this case is not now and has never been before this Court.

.    .    .    .    .

It would seem to us axiomatic that the denial of the writ would be sufficient to show that we refused to take jurisdiction because we felt that the action of the Court of Appeals was correct." 217 Tenn. at 232, 396 S.W.2d at 366.

Thereafter the Court said:

"We refused to grant the writ in this case and filed a memorandum opinion in which we set forth our reasons for such action and ordered that it be filed. In most cases the Clerk is directed to notify counsel that the petition has either been denied or granted and nothing more. If granted, of course, the case is set down for argument, as required by statute. If denied the matter is ended as we have refused to take jurisdiction." 217 Tenn. at 232, 233, 396 S.W.2d at 366.

Again, the Court said:

"It is obvious that we have no jurisdiction of this case because we cannot both deny the writ and at the same time take jurisdiction of the case." 217 Tenn. at 233, 396 S.W.2d at 366.

On the other hand, in *Enamelware Company v. Smith,* 168 Tenn. 203, 76 S.W.2d 644 (1934) this Court, in the course of considering the requirements of the certiorari procedure after judgment in the Court of Appeals said:

"It is, therefore, the filing of a sworn petition within the 45-day period, unless within that period the time is extended, that confers jurisdiction upon this court." 168 Tenn. at 206, 76 S.W.2d at 645.

Mr. Justice Tomlinson writing for the Court in *DePew v. King's Inc.,* 197 Tenn. 569, 276 S.W.2d 728 (1955) expressly approved the foregoing quote.

■ The unmistakable purpose of the Legislature in providing for review of the final judgments of the intermediate appellate courts by certiorari was to confer juris-

diction upon this Court the instant a petition for the writ of certiorari, meeting the requirements of T.C.A. §§ 27–819–27–823 inclusive is filed in the appropriate clerk's office.

We think that T.C.A. § 16–411 and *Ramsey v. Mutual Supply Company,* 221 Tenn. 437, 427 S.W.2d 211 (1968) support that position.

T.C.A. § 16–411 reads as follows:

"16–411. *Effect of judgments.*—The Court of Appeals is a court of record, and its judgments, after expiration of the time for filing petition for writ of certiorari with the Supreme Court and the time during which a duly filed petition for writ of certiorari remains undisposed of, shall be executed by all necessary and proper writs, unless superseded, reversed or modified by the Supreme Court. [Acts 1925, ch. 100, § 13; Shan.Supp., § 6325a13; mod. Code 1932, § 10627; mod. C. Supp. 1950, § 10627.]"

In *Ramsey,* this Court held that (1) while the filing of a petition for certiorari does not vacate the decree of the Court of Appeals, the decree is unenforceable by that Court during the period mentioned in T.C.A. § 16–411 and (2) since the 1950 amendment, the writ of supersedeas is unnecessary from and after a timely filing of a petition for certiorari, because the decree of the Court of Appeals remains unenforceable during the time that such petition is pending in this Court.

■ Of course, it is elementary that while jurisdiction is in this Court, or during the period within which a petition for certiorari may be filed, neither the intermediate court nor the trial court can assume jurisdiction. While that issue is not directly involved here, instances have occurred in both civil and criminal cases, recently, demonstrating a failure to recognize this principle which is implicit in the statutory certiorari procedure discussed above.

■ Among the definitions of the word jurisdiction appearing in Black's Law Dictionary, Fourth Edition, are the following:

"The word is a term of large and comprehensive import, and embraces every kind of judicial action. [citations omitted] It is the authority by which courts and judicial officers take cognizance of and decide cases."

It is the duty of this Court to make a disposition of every petition for the writ of certiorari. We *decide* each case that comes to this Court by petition for certiorari by granting or denying the writ. When we deny the writ, we have not "refused to take jurisdiction" as was said in *McAllester* and other cases but have made a final disposition of the case by approving the final decree of the Court of Appeals. Without jurisdiction this Court is without authority to review and deny a petition for certiorari.

Occasionally, along with the denial of the writ, an opinion is filed and less often, that opinion is published as in *Cantrell, McAllester, Gillespie v. Martin et al.,* 172 Tenn. 28, 109 S.W.2d 93 (1937), *Pass v. State,* 181 Tenn. 613, 184 S.W.2d 1 (1944), and *Watts v. Putnam County,* 525 S.W.2d 488 (Tenn. 1975). Also, in *Cunningham v. Union Chevrolet,* 177 Tenn. 214, 147 S.W.2d 746 and on petition to rehear, 177 Tenn. 226, 148 S.W.2d 633 (1941), *Powers v. L. & N. R. Co.,* 183 Tenn. 526, 194 S.W.2d 241 (1946), and *Franklin v. State,* 496 S.W.2d 885 (Tenn. 1973) opinions were filed and published and the writ was denied. But, the results reached by the final decree of the Court of Appeals were not changed in any of the cases mentioned above. The obvious conclusion to be drawn is that this Court deemed it appropriate to address some issue or issues raised in the petition for the writ of certiorari and because the final decree of the intermediate court was to remain unchanged it was deemed unnecessary to grant the writ. It is apparent that in the cases cited and others the opinion of the intermediate court, as distinguished from its final decree, was changed or modified by this Court.

Some certiorari petitions are disposed of by denial of the writ, concurring in results only. By precedent, and more recently in accord with Supreme Court Rule 31, such a denial evinces this Court's judgment that the opinion of the Court of Appeals should not be published. Thus, there are two methods employed by this Court when denying the writ of certiorari that can be said to affect the opinion of the Court of Appeals, without affecting the final decree.

The principles of law enunciated in published opinions of this Court that simultaneously deny certiorari have not been questioned or challenged on the grounds that the Court had no jurisdiction, unless and until certiorari was granted, and therefore its pronouncement was a nullity. For example, the opinion in *Franklin* established the law in Tennessee with respect to those factual situations under which retroactive application of the rule of *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) should be considered and the guidelines for making the ultimate determination of constitutionally prejudicial error. That case has been cited and followed by the Court of Criminal Appeals, this Court and implicitly approved by the United States Supreme Court in *Robbins v. Tennessee,* 414 U.S. 996, 94 S.Ct. 348, 38 L.Ed.2d 233 (1973). *Cantrell* and *Watts,* among other cases, have similarly established principles of law in this State that remain unquestionably the present controlling law on the issues addressed.

The concept of this Court's jurisdiction above expressed is obviously in conflict with statements appearing in *Red Top, Cantrell* and *McAllester,* to the effect that a case is "not now and has never been before this Court" unless the writ of certiorari is granted. We regard those statements as completely erroneous. It is unthinkable that the law indulges in fictions on the fundamental question of jurisdiction. It is indeed an anomaly if we are relying upon controlling precedent that has been established in cases that were never brought before this Court.

▪ Nevertheless, we cannot escape the conclusion that it is improper for this Court to change or modify a final decree of the intermediate appellate courts and deny the writ. We believe this conclusion is neces-

sary and desirable for the orderly administration of justice if not mandated by the relevant statutes and the precedent established by this Court's procedure on review of certiorari petitions since the enactment of Chapter 100, Public Acts, 1925. But, the reason, in our opinion, is not that this Court is without jurisdiction until the writ is granted but simply that denial of the writ necessarily puts the stamp of approval on the results reached in the final decree of the intermediate court and it is therefore inconsistent for this Court to change or modify that decree, as distinguished from the opinion, unless the writ be granted.

■ From what has been said, it follows that insofar as this Court's memorandum opinion denying the writ modified the final decree of the Court of Appeals it was of no force and effect. The result reached by the Court of Appeals is affirmed and the cause remanded to the General Sessions Court of Tipton County for enforcement and/or modification of the decree of the Court of Appeals with respect to alimony.

HARBISON, J., concurs.

BROCK, J., and COOPER, C. J. (see separate opinion).

HENRY, J., concurs in part, dissents in part (see separate opinion).

BROCK, Justice, concurring.

I concur in the decision of the Court affirming the decree of the Court of Appeals. However, I deem it advisable to state my views respecting the acquisition and exercise of jurisdiction by this Court in cases brought to it by petition for certiorari from the Court of Appeals and the Court of Criminal Appeals, since they differ considerably from the views stated in the opinion of the Court.

By "jurisdiction" I mean "lawful authority to act"; indeed the word is derived from the Latin "juris" and "dico," and means "To speak by the law." 50 C.J.S. 1089. I think it important to distinguish between the jurisdiction of this Court to entertain, i. e., grant or deny, a petition for certiorari and its jurisdiction to determine the merits of the case in question.

Jurisdiction to entertain such petitions is granted by T.C.A. §§ 27–819—27–823 and T.C.A. § 16–452.[1] But, jurisdiction to determine the merits of the case is not finally acquired unless and until this Court *grants the writ* of certiorari. The mere filing of a petition for certiorari with the clerk of this Court does not confer jurisdiction to determine the merits of the case; that jurisdiction is acquired under the statutes only if "The Supreme Court, or any judge thereof . . ." shall ". . . require, by (granting the writ of) certiorari, the removal to that court for review" of the case in

1. T.C.A. § 27–819:

"*Review of Court of Appeals by Supreme Court.*—The Supreme Court, or any judge thereof, shall have the right to require, by certiorari, the removal to that court for review of any case that has been finally determined in the Court of Appeals, upon a sworn petition for this purpose filed in the Supreme Court, which petition shall state the substance of the case to be decided, and shall be accompanied by *assignments of error* and brief in conformity with such rules as the Supreme Court may prescribe; and there shall be no other method of review."

T.C.A. § 16–452:

"*Certiorari from Supreme Court.*—The Supreme Court or any judge thereof, shall have the right to require by certiorari, the removal to that court for review of any case that has been finally determined in the Court of Criminal Appeals, upon a sworn petition for this

purpose addressed and filed with the clerk of the Supreme Court. The petition for certiorari shall state the substance of the issues in the case to be decided, and shall be accompanied by assignments of error and brief in conformity with such rules as the Supreme Court may prescribe, and there shall be no other method of review. Upon such writ of certiorari being granted, the original transcript and bill of exceptions filed in the Court of Criminal Appeals, the opinion, order and judgment of that court shall be filed in the Supreme Court, and the same shall constitute the entire record to be filed and reviewed by the Supreme Court. No further cost bond shall be required therefor, and the sureties on the appeal bond in connection with the appeal to the Court of Criminal Appeals shall likewise be liable on their surety bond for the costs incurred in connection with the review by the Supreme Court."

question. In my view, this has been the consistent understanding and holding of this Court for many years. *Cantrell v. Louisville & N. R. Co.*, 179 Tenn. 180, 163 S.W.2d 824 (1942); *Kendall Oil Co. v. Payne*, 200 Tenn. 600, 293 S.W.2d 43 (1956); *McAllester v. McAllester*, 217 Tenn. 226, 396 S.W.2d 363 (1965); *Red Top Cab Co. v. Garsides*, 155 Tenn. 614, 298 S.W. 263 (1927). I think it is a serious mistake to depart from it. Confusion is bound to result from the departure suggested in the opinion of the Court; this very case is ample proof of that.

Of course, this Court and any judge thereof may file an opinion upon the occasion of the denial of a writ of certiorari. But it is my view that such opinion should be limited to a statement of the reasons for refusal to take jurisdiction of the merits of the case; anything more is dictum and amounts to an advisory opinion which we are not authorized to give. *Crane Enamelware Co. v. Smith*, 168 Tenn. 203, 76 S.W.2d 644 (1934); *Reed v. Rhea County et al.*, 189 Tenn. 247, 225 S.W.2d 49 (1949).

I am authorized to state that Chief Justice COOPER concurs in this concurring opinion.

HENRY, Justice, concurring in part; dissenting in part.

## I.

### Concurring

I fully concur in so much of the majority opinion as holds that prior decisional law [1] to the effect that a case is "not now and has never been before this Court" unless the writ of certiorari is granted, is "completely erroneous".

There is no escape from the conclusion that on the instant of the filing of a petition for the writ of certiorari, the Court acquires a limited or preliminary or inchoate jurisdiction. Such jurisdiction vests for the purpose of enabling the Court to determine the merit of the application for review by writ of certiorari. Without this limited jurisdiction the certiorari process would be utterly destroyed in that jurisdiction could never vest to even consider the petitions. If we hold that jurisdiction only vests when the writ if granted, the interest of justice would require a grant in all cases. This would pervert the process by the imposition of a work load that would destroy the functional effectiveness of this Court.[2]

Upon the filing of the writ, the Court in the exercise of its sound judicial discretion may utilize any one of a number of procedural options.

First, it may grant the writ and dispose of it in accordance with the various options set forth in § 27–821, T.C.A.[3]

Second, it may deny the writ without assigning any reason. This simply means that the Court has declined to accept jurisdiction for any purpose except consideration of the merits of the petition in order to determine whether to grant or deny.

Third, it may deny the writ with a written memorandum or opinion, which may or may not be designated for publication. This means that the Court has elected to decide the controversy, or clarify the law, or considers it desirable to outline procedure on remand or that it has used this

---

**1.** *McAllester v. McAllester*, 217 Tenn. 226, 396 S.W.2d 363 (1965); *Cantrell v. Louisville & N.R. Co.*, 179 Tenn. 180, 163 S.W.2d 824 (1942), and *Red Top Cab Co. v. Garside*, 155 Tenn. 614, 278 S.W.2d 263 (1927).

**2.** During the calendar year 1976, a total of 634 petitions for the writ of certiorari were filed in this Court. It would be an utter impossibility for the Court to grant all writs and process them, along with direct appeals, with any semblance of efficiency.

**3.** § 27–821 shows on its face that it is not complete. Omitted therefrom is a portion of the fourth alternative which reads as follows: "(4) Remand the case to the trial court for further proceedings at the direction of the Supreme Court with instructions." This omitted proviso follows alternative (3) and precedes the words "or certify the additional record." See § 16–452, T.C.A. for the language governing certiorari to the Court of Criminal Appeals. This omission does not, however, remove the option since this Court has the inherent right to proceed under this option.

means of advising the trial court and counsel of the Court's views on a controlling principle of law; or for other good and sufficient reasons, considers this to be proper procedure.

In *Cantrell, supra,* the Court wrote an opinion denying certiorari in order to clarify the law with respect to the necessity for arguments on petitions for certiorari.

In *McAllester, supra,* the Court clarified a point of procedure in chancery cases, examined the evidence, commented upon its weight, and denied the writ.

In *Gillespie v. Martin et al.,* 172 Tenn. 28, 109 S.W.2d 93 (1937), the Court upheld the Court of Appeals, decided the controversy and denied the writ.

In *Pass v. State,* 181 Tenn. 613, 184 S.W.2d 1 (1944), the Court took jurisdiction, decided the case and denied the writ.

In the recent case of *Watts v. Putnam County,* 525 S.W.2d 488 (Tenn.1975), we took jurisdiction and denied the writ, in an elaborate opinion for the guidance of the trial judge on remand and to clarify the law by construing a troublesome statute.

## II.

### Dissenting

Regardless of the reasons prompting the Court to write an opinion in conjunction with the denial of a writ of certiorari, the fact remains that the opinion so written or the mandate entered is entitled to respect as the official action of this Court. Upon remand the action of this Court becomes the law of the case and is conclusive in subsequent proceedings. *City of Knoxville v. Connors,* 139 Tenn. 45, 201 S.W. 133 (1917); *Ray et al. v. Nanney,* 21 Tenn.App. 618, 114 S.W.2d 51 (1938). See also *Redwood v. Raskind,* 49 Tenn.App. 69, 350 S.W.2d 414 (1961), and *Gill v. Godwin,* 59 Tenn.App. 582, 442 S.W.2d 661 (1968).

I would hold that the memorandum opinion of this Court dated April 1, 1974 suggesting that consideration be given to petitioner's claim for homestead on remand and holding that such right is assertible on re-

mand is the law of the case and, as such, is binding upon the Court of Appeals. That court has no authority to overrule or modify a decision of this Court. *Bloodworth v. Stuart,* 221 Tenn. 567, 428 S.W.2d 786 (1968).

As I read the majority opinion, the right of this Court to write an authoritative opinion denying the writ is not questioned so long as the final opinion of the Court of Appeals is not modified, but this Court may not deny the writ and alter such a final decision.

My reasoning processes cannot comprehend such esoteric and ethereal enlightenment. If we deny the writ and agree with the Court of Appeals our jurisdictional feet are planted in concrete; but if we disagree, they are made of clay and stand in sand.

This Court has the inherent power to deny certiorari and direct the further disposition of the case on remand. It is a power that should be used sparingly since it deprives counsel of oral argument, a right which we, very properly, liberally indulge.

I do not look with favor upon frittering away our jurisdiction. We have recently spoken to this issue in no uncertain terms. In *Barger v. Brock,* 535 S.W.2d 337 (Tenn. 1976), after recognizing that this Court "is supreme in fact as well as in name", we said:

> It is a controlling principle that inferior courts must abide the orders, decrees and precedents of higher courts. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process. There would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decisions. Personal and property rights would be insecure and litigation would know no end. 535 S.W.2d at 341.

The conservation of judicial manpower in the face of a crushing certiorari work load demands that this Court indulge in the practice of writing opinions in cases wherein certiorari is denied. A proper regard for the intermediate appellate courts and for

the attorneys and litigants involved commands the same conclusion.

It is patently unfair for us to deny a petition and "concur in the results only", leaving the intermediate courts in a quandary as to the reasons for our action. Moreover, in many of those cases where there has been a remand, we place the trial judge and counsel in a position of having to speculate as to our reasons.

In place of denying the petition and concurring in the results only we should forthrightly state the reasons for our denial. Such a statement need not be elaborate but should be sufficient to apprise all lower courts and counsel of the precise reasons prompting our action.

In many instances we concur in the results only because of our disagreement with only a portion—sometimes a single sentence or paragraph of an opinion otherwise without objection.

The result of this practice is that many outstanding opinions of our intermediate appellate courts are consigned to oblivion and much scholarly research is lost to the profession.

It is this procedure which has produced the rule that our denial of certiorari means only that we have concurred in the results reached by the intermediate appellate courts. See *Adams v. State*, 547 S.W.2d 553 (Tenn.1977) (opinion released February 28, 1977).

Under a proper certiorari procedure, our denial of the writ should mean that we affirm in all respects, both the reasoning and the results of the intermediate Court of Appeals. But this meaning is valid only under a procedure wherein we have and exercise the right to hand down a binding opinion on certiorari denials.

In our certiorari conference held on February 1, 1976, we took final action on a total of sixty-six (66) petitions for certiorari. We denied the writ and concurred in the results only in eleven (11) cases, or 16⅔ percent. In each of these cases, an *ad hoc* standard of review made this conclusion feasible, but in 11 cases, appellate judges were left to speculate as to our reasons. This situation, in my view, is intolerable. Appellate judges are entitled to know wherein they have erred.

A typical criminal case wherein we confused the Court of Criminal Appeals and the profession by a failure to indicate, in a brief opinion, the reasons for our denial, is *Jackson v. State*, 539 S.W.2d 337 (Tenn.Cr. App.1976), wherein we denied the writ without assigning our reasons. This led to an erroneous conclusion on the part of the Court of Criminal Appeals and resulted in the reversal of *Adams v. State, supra*, in which, for the first time, we specified our reasons for denying the writ in *Jackson*. A simple one page opinion denying the writ in *Jackson* would have clarified our position to the Court of Criminal Appeals, and, of course, such an opinion would be binding.

Our procedure for processing certiorari petitions is antiquated. Fairness compels the inclusion that much of the problem is of our own making. The conclusion reached in the other opinions in this case further muddles the problem and stands as an obstacle to our correcting an intolerable situation.

I deplore our practice and dissent from the majority opinion.

The memorandum that precipitated this controversy was prepared for the Court by my distinguished predecessor, Mr. Justice Allison B. Humphreys. I cannot bring myself to believe that this former distinguished professor of law, Circuit Judge, Assistant State Attorney General, State Solicitor General, Judge of the Court of Appeals, and Justice on this Court, whose brilliant opinions have enriched the decisional law of our state, was in error on this point of procedural law.

I would preserve the jurisdiction of this Court, reverse the Court of Appeals and remand this action to the trial court with directions to award homestead.